IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMERICAN RICE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. H-05-3227 |
| v. | § | |
| | § | |
| PRODUCERS RICE MILL, INC., | § | |
| | § | |
| Defendant. | § | |

**AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW
AND ORDER**

Based on the evidence at trial, the parties' briefing, and the court's post-trial hearings, the court makes the following Findings of Fact and Conclusions of Law according to Fed. R. Civ. P. 52. These Findings of Fact and Conclusions of Law supersede the Findings of Fact and Conclusions of Law entered on January 10, 2006 (Docket Entry No. 61).

**FINDINGS OF FACT**

1.  For over 35 years plaintiff, American Rice, Inc. ("ARI"), has continuously sold from the United States into Saudi Arabia parboiled American long-grain rice under ARI's ABU BINT brand. During this period ABU BINT brand parboiled American long-grain

rice has been advertised, promoted, and packaged in conjunction with ARI's Girl Design evidenced by Plaintiff's Ex. 72.  During this period ARI has accounted for about 60-70% of all rice sales from the United States into Saudi Arabia.

2.  Over the last 35 years ARI has spent $25,000,000 to $30,000,000 advertising and promoting its ABU BINT brand and related Girl Design, particularly in Saudi Arabia.  ABU BINT brand rice sells at a premium over the price of competing parboiled American long-grain rice in Saudi Arabia because of the goodwill it has established there.

3.  The ARI Girl Design is the key feature of the ABU BINT brand.  Consumers in Saudi Arabia identify ABU BINT rice by the ARI Girl Design.  Some Saudi consumers refer to ABU BINT brand rice as "Girl Brand" rice.

4.  ARI owns U.S. Trademark Registration No. 882,997, issued December 23, 1969, for the ARI Girl Design.  (Plaintiff's Ex. 69)  All conditions for incontestability under 15 U.S.C. § 1065 have occurred.  (Admission of Fact No. 3)  The Girl Design registration was most recently renewed on August 4, 2000.  (Plaintiff's Ex. 69)  ARI's Girl Design is protectable.  Defendant, Producers Rice Mill, Inc. ("PRMI"), had actual knowledge of the ARI Girl Design and its registration before it began using the challenged Girl with Hat Design.  (Admission of Fact No. 5)

5.   In April of 2005 ARI sued PRMI for infringing ARI's Girl Design registration with PRMI's Girl Design.  In that case PRMI had attempted to sell into Saudi Arabia parboiled American long-grain rice using the PRMI Girl Design. (Plaintiff's Ex. 73)  The parties settled that case by an agreement dated April 21, 2005 (the "Settlement Agreement"). (Plaintiff's Ex. 67)  In that Agreement PRMI promised not to use the PRMI Girl Design or any other design confusingly similar to the ARI Girl Design.  When PRMI executed the Settlement Agreement it intended to continue using its Girl with Hat Design (Defendant's Ex. 10) in the sale of parboiled rice in Saudi Arabia in competition with ARI.

6.   On about September 7, 2005, ARI's agent in Saudi Arabia, Alpha Trading and Shipping Agencies Ltd. ("Alpha"), advised ARI that PRMI was shipping into Saudi Arabia rice labeled with the PRMI Girl with Hat Design.

7.   PRMI began using the Girl with Hat Design in 1985 in connection with the sale of parboiled rice in Saudi Arabia.  From 1985 until 2004 PRMI used the Girl with Hat Design with the marks AL FALAHA (in Arabic script) and PAR EXCELLENCE (in English script).  Beginning in the summer of 2005 PRMI changed the Arabic mark to BOTHAINA (in Arabic script).  The female image, or icon, that PRMI uses in the Girl with Hat Design has remained the same since 1985.

8.   PRMI adopted the Girl with Hat Design in 1985 because its customers, who are distributors of rice in Saudi Arabia, wanted a design with a girl.  PRMI chose to continue to use the Girl with Hat Design in 2005 because its customers then requested that PRMI use a girl design.  PRMI chose the Girl with Hat Design to benefit from the goodwill of ARI's established Girl Design in Saudi Arabia. Although PRMI's distributor customers were not confused by the Girl with Hat Design, both PRMI and its customers knew that consumers of rice in Saudi Arabia would likely be confused by the similarities between ARI's Girl Design and PRMI's Girl with Hat Design.

9.   The PRMI Girl with Hat Design (Defendant's Ex. 10) is confusingly similar to ARI's Girl Design (Plaintiff's Ex. 72), and it is likely that many consumers in Saudi Arabia would be confused as to source, sponsorship, affiliation, or association of PRMI's rice.

　　　　a.   ARI's Girl Design mark is strong, fanciful, and famous in Saudi Arabia.

　　　　b.   The marks are very similar.  Both depict young women.  Both women are about the same age, have the same color hair and similar hairstyles, have a round face, have a similar physique, feature prominent collars, are posed behind a rectangular platform, and are holding a bowl of rice.  Both marks use a red, black, and yellow color scheme of roughly the same tones.  The woman in ARI's Girl Design appears to be Chinese or East Asian, and is not wearing a scarf or hat.  The woman in PRMI's Girl with Hat Design is not Chinese or East Asian and is wearing a scarf or hat.

-4-

c.   The products of the two marks -- parboiled American long-grain rice -- are identical.

d.   Rice sold by ARI and rice sold by PRMI in Saudi Arabia are sold in the same channels of trade and are available to Saudi consumers at the same retail locations, although PRMI sells more rice to cookhouses and institutions, where brand is less important to purchasing decisions, and ARI sells more rice in supermarkets, where brand is more important to purchasing decisions. Saudi distributors sell PRMI's BOTHAINA rice to the same wholesale and retail locations in Saudi Arabia at which ARI's ABU BINT rice is sold.

e.   PRMI has never advertised any of its marks in Saudi Arabia in any media. (Admission of Fact No. 4) PRMI has not established any goodwill among consumers in Saudi Arabia with regard to PRMI's Girl with Hat Design, independent of the goodwill of the ARI Girl Design.

f.   At all times material to this action PRMI knew of the ABU BINT brand, the related ARI Girl Design, and ARI's registration rights. By selling its PRMI Girl with Hat Design brand parboiled American long-grain rice into Saudi Arabia, PRMI intended to trade on the goodwill of the ABU BINT brand and its related Girl Design in disregard of ARI's rights.

g.   Saudi Arabian consumers often identify rice by the images or icons associated with those brands. Non-ABU BINT rice is sometimes sold in Saudi Arabia as ABU BINT rice under other icons, in counterfeit ABU BINT rice bags, and in fraudulently refilled ABU BINT bags.

h.   There is no evidence of actual confusion in the market between the ARI Girl Design and the PRMI Girl with Hat Design.

10.   PRMI's use of the PRMI Girl with Hat Design infringes ARI's federal trademark rights.

11. ARI tendered performance under the 2005 Settlement Agreement. (Admission of Fact No. 6) PRMI materially breached the Settlement Agreement by using in connection with rice sold into Saudi Arabia its Girl with Hat Design that is confusingly similar to the ARI Girl Design.

12. After the filing of this lawsuit ARI made a reasonable demand, through an authorized agent of PRMI, that PRMI cease its use of PRMI's Girl with Hat Design and any other design with a girl icon. PRMI did not comply with that demand within 30 days. ARI has satisfied all conditions precedent to recovery of attorney's fees pursuant to TEX. CIV. PRAC. & REM. CODE § 38.0002.

13. The amount of reasonable and necessary fees is $383,986.10.[1] Although ARI has requested attorney's fees of $494,000 for trial and further fees in case of an appeal, the court

---

[1]ARI has requested $461,315 for trial court attorney's fees, not including non-attorney personnel or expenses. ARI's Agreed Attorney's Fee Calculation, Docket Entry No. 94. PRMI has offered several specific, valid objections to ARI's attorney's fees, which ARI failed to respond to despite being given numerous opportunities to do so. The court therefore has reduced the amount of $461,315 by $72,307.50 based on objections by PRMI. Appendix A of PRMI's (1) Objections to Plaintiff's Request for Attorney's Fees and (2) Renewed Request for Unredacted Copy of Attorney Bills, Docket Entry No. 82. The court has additionally reduced ARI's attorney fee award by $5,021.40 based on later-filed objections by PRMI. PRMI's Acknowledgment of Amount of Attorney's Fees Claimed by Plaintiff, Docket Entry No. 92.

has reduced this award.[2]  ARI's awarded attorney's fees do not include para-professional fees because the evidence does not establish the qualifications of the para-professionals.   In addition, because ARI has not provided sufficient evidence to establish the likely amount of attorney's fees in the event of a successful appeal, the court will not award such fees.

14.  Prior to September 7, 2005, ARI was not aware and had no reason to be aware of any sales by PRMI of rice in connection with the PRMI Girl with Hat Design.  PRMI has shipped and sold rice with the challenged Girl with Hat Design into Saudi Arabia more or less continuously since mid-1985.  The amount sold varied from year to year, but averaged between 1,000 and 3,000 tons per year.  This amount is small compared to the total amount of rice sold in Saudi Arabia on a yearly basis.  ARI alone currently sells approximately 120,000 to 150,000 tons of rice in Saudi Arabia per year.  ARI's market share is approximately 65 percent of the Saudi Arabian parboiled American long-grain rice market, and parboiled rice is approximately 10 to 13 percent of the Saudi Arabian total rice market.  Although ARI's agent, Alpha, actively combed the Saudi markets looking for infringing marks (e.g., Plaintiff's Ex. 55), stumbling across PRMI's Girl with Hat

---

[2]Plaintiff's Exhibit 79 (requesting $494,000 in attorney's fees for trial and further fees in the event of a successful appeal).

Design would have been like finding the proverbial needle in the haystack.

15.   PRMI's argument that ARI had actual knowledge of the Girl with Hat Design in early 1989 is not borne out by the evidence. PRMI argues that Alpha complained to the Saudi Ministry of Commerce about several instances of trademark infringement, including the AL FALAHA bags with the Girl with Hat Design.  But the fax from Lee Adams of PRMI to his attorneys containing the Saudi Ministry of Commerce remarks does not prove that ARI knew of the Girl with Hat Design.  The only statement regarding AL FALAHA reads:

> As regards sample No. (12) Al Falaha, there appear at the bottom of the picture of the bag the words:  'Super American Rice'.   Below this phrase there appear the words:  'Net weight 45 Kgs.'  On the back of the bag there appear the words 'Al Jiffri, Jeddah'.   These particulars are in English and we have no remarks in connection with them.

(Defendant's Ex. 44)  Because there is no mention that AL FALAHA contains a Girl with Hat Design, there is no evidence that ARI (or Alpha) was actually aware that PRMI was using a Girl with Hat Design on its AL FALAHA brand by virtue of its receipt of these documents from the Saudi Minister of Commerce.

16.   PRMI has not established the affirmative defense of laches.

17.   PRMI has nevertheless been prejudiced by the timing of this action because records of PRMI's sale of rice in Saudi Arabia before 2005 are no longer available.

18.  PRMI's sales of rice in Saudi Arabia in 2005 using the Girl with Hat Design were $1,256,635.  The credible evidence established that PRMI's profits from these sales were $227.10.  An award to ARI of an amount greater than $227.10 would be excessive and would constitute a penalty.

19.  ARI is entitled under the Lanham Act to recover PRMI's profits on sales of rice in Saudi Arabia in 2005 under the infringing Girl with Hat Design.  PRMI's conduct in selling this rice under the Girl with Hat Design was intended to trade on the goodwill of ARI's Girl Design, thereby intending to confuse customers in Saudi Arabia.  Although there is no evidence that sales by ARI were actually diverted, PRMI's intent was to sell rice to distributors who would otherwise likely purchase rice from ARI.  Because of the timing of this action, only sales for 2005 will be considered since PRMI no longer has adequate records of sales or costs for earlier years.  Although there was no evidence of "palming off" by PRMI, the public interest in making trademark infringement unprofitable and in providing ARI an adequate remedy justifies an award of PRMI's profits from 2005 Saudi sales to ARI.

20.  A permanent injunction barring PRMI and those recited in Rule 65(d) from selling, offering to sell, or transporting rice in connection with a design featuring a woman in Saudi Arabia and Djibouti without prior approval by this court is appropriate

because of PRMI's repeated infringement of ARI's trademark rights by selling rice in Saudi Arabia with designs featuring a woman.

21.  PRMI has custody or control of apparatus bearing the infringing PRMI Girl with Hat Design.  That apparatus will not be destroyed as part of the injunctive relief ordered by the court because it is possible that PRMI could use the apparatus for lawful purposes.

22.  Alpha is not a necessary or indispensable party to this action under Federal Rule of Civil Procedure 19.  Alpha and ARI are co-owners of the Saudi registration of the ABU BINT brand and related Girl Design.  (Defendant's Ex. 9)  ARI is the sole owner of the U.S. Trademark for the ARI Girl Design.  (Plaintiff's Ex. 69)  Alpha has asserted no interest in this litigation.  (Plaintiff's Ex. 56)

23.  The court declines to make an exceptional case finding under 15 U.S.C. § 1117 of the Lanham Act.  Although PRMI did intentionally trade on the goodwill of ARI's Girl Design, ARI did not prove by clear and convincing evidence that PRMI's conduct was so malicious, fraudulent, deliberate, or willful as to merit an exceptional case finding.  In addition, PRMI asserted a good faith defense of laches, which militates against an exceptional case finding.

24.  ARI has failed to elect its remedies between the breach of contract claim and the Lanham Act claim.[3]   The court will therefore do so for ARI, using the findings affording greater recovery.  ARI is entitled to permanent injunction under both claims, attorney's fees under its breach of contract claim, and profits under its Lanham Act claim.  Because the amount of attorney's fees under the breach of contract claim is much greater than the amount of profits awarded under the Lanham Act, the court will award ARI breach of contract remedies.

## CONCLUSIONS OF LAW

1.  The Lanham Act provides a trademark registrant a civil right of action against "any person who shall . . . use in commerce" a colorable imitation of a registered mark in connection with the sale, offering for sale, or distribution of goods.  15 U.S.C. § 1114(1)(a).  Section 1121 provides federal courts with subject matter jurisdiction over causes of action arising under the Act.  American Rice v. Arkansas Rice Growers Coop. Ass'n, 701 F.2d 408, 412-13 (5th Cir. 1983).

---

[3]ARI filed a Conditional Election of Remedies and Motion for Rendition of Judgment (Docket Entry No. 85) conditionally waiving any recovery of profits greater than $1,256,635 and waiving attorney's fees if the court awarded ARI injunctive relief and profits of $1,256,635.  Because the profits later found recoverable are substantially less than $1,256,635, the court does not consider the Conditional Election of Remedies to be a valid election under Texas law.

2.  "[A] United States district court has jurisdiction to award relief to an American corporation against acts of trademark infringement and unfair competition consummated in a foreign country by a citizen and resident of the United States." Id. at 413 (quoting Steele v. Bulova Watch Co., 73 S.Ct. 252, 253 (1952)). The facts relevant to the court's determination of whether the contacts and interest of the United States suffice to support the exercise of extraterritorial jurisdiction include the citizenship of the defendant, the effect on United States commerce, and the existence of a conflict with foreign law. Id. at 414.  The list of factors is not exhaustive.  Id.

3.  The court has jurisdiction over PRMI in this action. PRMI is an American corporation based in Stuttgart, Arkansas.  It sells rice both domestically and internationally.  Its activities in Saudi Arabia have a substantial effect on interstate commerce. Like the defendant in American Rice, PRMI's Saudi Arabian sales had more than an insignificant effect on United States commerce, from the processing and packaging of the rice to its transportation and distribution.  Id.  By unlawfully infringing on ARI's mark in Saudi Arabia, PRMI affected ARI, an American company that also processes, packages, transports, and delivers rice to Saudi Arabia from the United States.  Id.

-12-

4.   PRMI has not disputed that its activities have an effect on United States commerce.  PRMI instead argues that its mark is not infringing under Saudi Arabian law, and therefore this court does not have jurisdiction to hear this action.  Under Federal Rule of Civil Procedure 44.1, a party intending to raise an issue of foreign law shall give written notice.  Rule 44.1 allows a federal court to consider any relevant material or sources in determining foreign law.  PRMI has not adequately proven a conflict with Saudi Arabian law.  The evidence does not demonstrate that the Saudi Arabian government considers PRMI's mark non-infringing upon ARI's mark.

5.   After considering all of the relevant factors and all of the evidence, the court concludes that it has subject matter jurisdiction over this action.

6.   A cause of action for the infringement of a registered mark in violation of 15 U.S.C. § 1114 exists where a person uses (1) any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in interstate commerce; (4) in connection with the sale, offering for sale, distribution, or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake, or to deceive. Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc., 510 F.2d 1004, 1009-10 (5th Cir. 1975).

7.   In determining a likelihood of confusion, at least the following factors are relevant:

> (1)  the type of trademark at issue;
>
> (2)  similarity of design;
>
> (3)  similarity of product;
>
> (4)  identity of retail outlets and purchasers;
>
> (5)  identity of advertising media utilized;
>
> (6)  defendant's intent;
>
> (7)  actual confusion; and
>
> (8)  degree of care exercised by potential purchasers.

Society of Financial Examiners v. National Ass'n of Certified Fraud Examiners, 41 F.3d 223, 228 n.10 (5th Cir. 1995) (listing the first seven factors); Oreck Corp. v. U.S. Floor Systems, Inc., 803 F.2d 166, 170 (5th Cir. 1986) (listing all eight factors).  This list is not exhaustive and no one factor is controlling.  Conan Properties, Inc. v. Conans Pizza, Inc., 752 F.2d 145, 150 (5th Cir. 1985).

8.   Evidence of a defendant's intent to confuse is sufficient to justify the conclusion that confusion is likely.  Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc., 659 F.2d 695, 703-04 (5th Cir. 1981); National Ass'n of Blue Shield Plans v. United Bankers Life Ins. Co., 362 F.2d 374, 377-78 (5th Cir. 1966).

9.  The court may award a trademark owner who establishes infringement under the Lanham Act injunctive relief, defendant's

profits, any damages sustained by the plaintiff, the costs of the action, and destruction of infringing articles.  15 U.S.C. §§ 1116, 1117, and 1118.  Willful infringement is not a prerequisite for the recovery of profits.  <u>Quick Technologies, Inc. v. Sage Group PLC</u>, 313 F.3d 338, 349 (5th Cir. 2002).  Instead, the court must look at willful infringement along with other factors to determine whether an award of profits is appropriate.  Those factors include "(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." <u>Id.</u> at 348-49 (citations omitted).

10.  When proving a defendant's profits the plaintiff is only required to prove defendant's sales; the defendant must then prove all elements of costs or deductions attributable to the sales.  15 U.S.C. § 1117(a).  Once the court has determined that profits should be awarded, it may award only those profits attributable to the unlawful use of the trademark.  <u>Pebble Beach</u>, 155 F.3d at 554. The recovery of a defendant's profits is "subject to the principles of equity." <u>Id.</u>  The court is directed by § 1117(a) that "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion

enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.  Such sum in either of the above circumstances shall constitute compensation and not a penalty."

11.  Under the Lanham Act the court has the discretion to enter an injunction to prevent continued infringement. 15 U.S.C. § 1116(a); Pebble Beach Co. v. Tour 18 I, 155 F.3d 526, 549 (5th Cir. 1998).  In fashioning an injunction the proven infringer should be kept safely away from the perimeter of the plaintiff's mark to prevent future infringement.  Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd., 282 F.3d 23 (1st Cir. 2002) (affirming an injunction against defendant's use of a mark too similar to defendant's previously infringing mark).  Infringers may be banned from certain non-infringing uses of trademark when the infringer has made "generous use of the plaintiff's marks in the past." Pebble Beach, 155 F.3d at 553.  "Otherwise unassailable activities may be proscribed where a party has transgressed the governing legal standard."  Id.  See also Chevron Chemical Co. v. Voluntary Purchasing Groups, 659 F.2d 695, 705-06 (5th Cir. 1981); Broderick & Bascom Rope Co. v. Manoff, 41 F.2d 353, 354 (6th Cir. 1930) (endorsing the rule to keep infringer a "safe distance away from the margin line").

12.   It is not necessary for a plaintiff to establish actual damage or injury to obtain injunctive relief.  _Pure Foods, Inc. v. Minute Maid Corp._, 214 F.2d 792 (5th Cir. 1954) (noting all that must be established to stop defendant is likelihood of confusion, and hence of injury).   This rule is premised on the fact that infringement places the registrant's business reputation beyond its control even though no loss in business is shown.   _International Kennel Club, Inc. v. Mighty Star, Inc._, 846 F.2d 1079 (7th Cir. 1988).

13.   In "exceptional cases" the court may award attorney's fees to a prevailing party in a trademark infringement case.   15 U.S.C. § 1117.   "An exceptional case is one where the violative acts can be characterized as malicious, fraudulent, deliberate, or willful."  _Pebble Beach_, 155 F.3d at 555 (quoting _Seven-Up Co. v. Coca-Cola Co._, 86 F.3d 1379, 1390 (5th Cir. 1996)).   The prevailing party must prove an exceptional case by clear and convincing evidence.   _Id._  After the prevailing party has made this showing, the court may award attorney's fees at its discretion.   _Id._

14.   The injunction to be entered will be limited to Saudi Arabia and Djibouti because these are the only areas about which ARI offered evidence and about which the court made findings of fact and conclusions of law.   _See_ _American Foods, Inc. v. Golden Flake, Inc._, 312 F.2d 619, 626 (5th Cir. 1963).   Although the court

has discretion to enjoin defendant from infringing plaintiff's mark beyond Saudi Arabia and Djibouti as a breach of contract remedy, the court declines to do so because injunctive relief should be limited to that which is necessary to prevent recurrence of the illegal conduct at issue.   This case and the parties' previous litigation, see American Rice, Inc. v. Arkansas Rice Growers Cooperative Ass'n, 701 F.2d 408 (5th Cir. 1983), are ample evidence of PRMI's long-standing attempts to trade on the goodwill of ARI's marks in the sale of rice.  But all of this litigation has focused on rice sales in Saudi Arabia and to some extent Djibouti.  The court thus sees no persuasive reason to enjoin sales of rice with infringing marks worldwide, as ARI requests.

15.  When determining whether a case is exceptional the court considers all the facts and circumstances.  Id.  See also Proctor & Gamble Co. v. Amway Corp., 280 F.3d 519, 526-28 (5th Cir. 2002). An award of attorney's fees "generally 'require[s] a showing of a high degree of culpability on the part of the infringer, for example, bad faith or fraud.'"  Pebble Beach, 155 F.3d at 556 (quoting Texas Pig Stands v. Hard Rock Café Int'l, 951 F.2d 684, 697 (5th Cir. 1992)).  Lack of damages is an important factor in determining whether a case is exceptional.  Id.  A court should normally not find a case exceptional where the party presents what it in good faith believes may be a legitimate defense.  CJC

<u>Holdings, Inc. v. Wright & Lato, Inc.</u>, 979 F.2d 60, 66 (5th Cir. 1992).

16.   The construction and enforcement of the provisions of a settlement agreement are governed by Texas contract law.   <u>Eastern Energy, Inc. v. Unico Oil & Gas, Inc.</u>, 861 F.2d 1379, 1380 (5th Cir. 1988).   Texas leaves interpretation of a settlement agreement to the court absent an ambiguity.   <u>Id.</u>

17.   The elements of a breach of contract action are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach.   <u>Prudential Sec. v. Haugland</u>, 973 S.W.2d 394, 396 (Tex. App. -- El Paso 1998, pet. denied).

18.   Whether a breach of contract is a material breach turns on the facts of each case.   <u>Advance Components, Inc. v. Goodstein</u>, 608 S.W.2d 737, 739 (Tex. Civ. App. -- Dallas 1980, writ ref'd n.r.e.).   The Texas Supreme Court has endorsed the following factors in evaluating the materiality of a breach:   (1) the extent to which the non-breaching party will be deprived of the benefit that it could have reasonably anticipated from full performance; (2) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (3) the extent to which the party failing to perform or

to offer to perform will suffer forfeiture; (4) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and (5) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.  Hernandez v. Gulf Group Lloyds, 875 S.W.2d 691, 693 n.2 (Tex. 1994) (citing RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981)).

19.  Contractual rights are enforceable by injunction where exceptional circumstances exist, such as an inadequate remedy at law and irreparable injury.  Butnaru v. Ford Motor Co., 84 S.W.3d 198, 209-10 (Tex. 2002).  When a settlement agreement not to use a trademark is breached, the injury is irreparable and the legal remedy of damages is inadequate due to the continuing injury to the goodwill of the mark.  See Blue Cross and Blue Shield Ass'n v. American Express Co., 2005 WL 1838340 at *5-6 (N.D. Ill. 2005); Alfred Dunhill, Ltd. v. Dunhill Compact Classics, Inc., 11 U.S.P.Q.2d 1078, 1080 (C.D. Cal. 1988).  An injunction is therefore appropriate to enforce a contractual promise not to use a trademark.  Qaddura v. Indo-European Foods, Inc., 141 S.W.3d 882, 891-92 (Tex. App. -- Dallas 2004, pet. denied); J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 30:2 (4th ed. 2004).

20.  A successful plaintiff in a breach of contract action is entitled to attorney's fees as a matter of right, provided the conditions precedent set forth in Texas Civil Practice & Remedies Code § 38.002 are satisfied.  TEX. CIV. PRAC. & REM. CODE § 38.001. To recover attorney's fees the plaintiff must be represented by an attorney, present the claim to the opposing party or to its agent, and payment must not have been tendered before the expiration of the 30th day after the claim is presented.  Id. at § 38.002.  A party entitled to recover attorney's fees at trial is also entitled to recover them for successfully defending the case on appeal.  DP Solutions, Inc. v. Rollins, Inc., 353 F.3d 421, 436 (5th Cir. 2003).

21.  Moreover, to be entitled to recover attorney's fees "a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages."  Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997).  Although the Texas Supreme Court has never directly ruled on what form "damages" may take, three Texas courts of appeals have held that an award of specific performance alone is sufficient to entitle a prevailing plaintiff to attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code.  See Rasmusson v. LBC PetroUnited, Inc., 124 S.W.3d 283, 286-87 (Tex. App. -- Houston [14th Dist.] 2003, pet. denied); Butler v. Arrow Mirror & Glass,

-21-

<u>Inc.</u>, 51 S.W.3d 787, 796-97 (Tex. App. -- Houston [1st Dist.], no
pet.).   <u>See also</u> <u>RenewData Corp. v. Strickler</u>, 2006 WL 504998 at
*16-17 (Tex. App. -- Austin March 3, 2006, no pet. h.).   The
"damages" required by <u>Solis</u> are not limited to pecuniary loss, but
include specific performance such as an injunction.   <u>Butler</u>, 51
S.W.3d at 797.   <u>See also</u> <u>Price v. Allstate Ins. Co.</u>, 2006
WL 1880534 at *1 (5th Cir. July 7, 2006) (per curiam).   This
court's previous opinion in <u>Ryan Energy Technologies v. CDG-MWD GP,
L.L.C.</u>, 2006 WL 213916 at *6-9 (S.D. Tex. Jan. 27, 2006), does not
hold otherwise.   <u>Ryan</u> is inapposite because there the plaintiff
recovered neither monetary damages for pecuniary loss nor obtained
specific performance.   <u>Id.</u> at 9.

22.  When a party is entitled to attorney's fees for some
claims and not others, the prevailing party must segregate the
recoverable attorney's fees from the unrecoverable attorney's fees.
<u>Stewart Title Guarantee Co. v. Sterling</u>, 822 S.W.2d 1, 10-11 (Tex.
1991).  An exception to this rule occurs when claims for recover-
able and nonrecoverable fees are intertwined to the point of being
inseparable.   <u>Id.</u> at 11.  Claims are inexorably intertwined when
the causes of action involved in the suit are dependent upon the
same set of facts and circumstances.   <u>Id.</u>  In this case the
plaintiff's attorney's fees are not capable of segregation.  Both
the contract claim and the trademark claim are based on the same

set of operative facts.  Furthermore, the language of the Settle-
ment Agreement prohibits PRMI from using the PRMI Girl Design or
any design "confusingly similar" to the ARI Girl Design at issue in
this case.  The Settlement Agreement was entered into to resolve a
previously-filed lawsuit between the parties, and proof of breach
of the Settlement Agreement largely overlaps and involves many of
the same issues as ARI's Lanham Act claim.  To prove both claims,
ARI must establish that PRMI's use of the PRMI Girl with Hat Design
was likely to cause confusion with ARI's Girl Design.

23.  The "election of remedies" doctrine is an affirmative
defense that under certain circumstances bars a person from
pursuing two inconsistent remedies.  <u>Medina v. Herrera</u>, 927 S.W.2d
597, 600 (Tex. 1996) (citing <u>Bocanegra v. Aetna Life Ins. Co.</u>, 605
S.W.2d 848, 850-52 (Tex. 1980).  "An election of remedies is the
act of choosing between two or more inconsistent but coexistent
modes of procedure or relief allowed by law on the same set of
facts.  When a party thus chooses to exercise one of them he
abandons his right to exercise the other remedy[.]"  <u>Custom
Leasing, Inc. v. Texas Bank and Trust Co. of Dallas</u>, 491 S.W.2d
869, 871 (Tex. 1973).  The election doctrine may constitute a bar
to relief when (1) one successfully exercises an informed choice
(2) between two or more remedies, rights, or states of facts
(3) which are so inconsistent as to (4) constitute manifest
injustice.  <u>Bocanegra</u>, 605 S.W.2d at 851.  If a prevailing party

fails to elect between alternative measures of damages, the court should utilize the findings affording the greater recovery and render judgment accordingly.   <u>Birchfield v. Texarkana Memorial Hosp.</u>, 747 S.W.2d 361, 367 (Tex. 1987).

24.  A plaintiff may not pick and choose among damage elements arising under alternative theories of recovery.  <u>See</u> <u>Quest Medical, Inc. v. Apprill</u>, 90 F.3d 1080, 1093-94 (5th Cir. 1996) (citing <u>Holland v. Hayden</u>, 901 S.W.2d 763 (Tex. App. -- Houston [14th Dist.] 1995, writ denied)).   An election of remedies is not required when the theories of recovery are co-existent and not alternative.  <u>Calstar Properties, L.L.C. v. City of Fort Worth</u>, 139 S.W.3d 433, 440 (Tex. App. -- Fort Worth 2004, no pet.).  ARI's Lanham Act cause of action and its breach of contract cause of action are inconsistent because they involve different theories of recovery for the same injury from the same party.  Allowing profits under the Lanham Act and attorney's fees under the breach of contract action would allow ARI to pick and choose damage elements under each theory.

25.  Texas law governs the reasonableness of attorney's fees under Texas Civil Practice and Remedies Code section 38.001(8).  <u>Mathis v. Exxon Corp.</u>, 302 F.3d 448, 462.  Under Texas law, there is a rebuttable presumption of reasonableness for fees that are "usual" or "customary."  TEX. CIV. PRAC. & REM. CODE § 38.003.  When the issue of attorney's fees is tried to the court, the judge may

take judicial notice of the "usual and customary fees" and the
contents of the case file.  Id. at § 38.004.  See also Mathis, 302
F.3d at 462.  The court will take judicial notice of both the usual
and customary fees and the contents of the court's file.

26.   To determine the reasonableness and necessity of
attorney's fees, the court considers the following eight factors:
(1) the time and labor required, the novelty and difficulty of the
questions involved, and the skill required to perform the legal
services properly; (2) the likelihood that the acceptance of the
particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal
services; (4) the amount involved and the results obtained; (5) the
time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the
client; (7) the experience, reputation, and ability of the lawyer
or lawyers performing the services; and (8) whether the fee is
fixed or contingent on results obtained or uncertainty of
collection before the legal services have been rendered.  Arthur
Anderson & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex.
1997).  Paralegal and other para-professional legal work that went
into an attorney's work product is properly included in the

attorney's fees at a reduced rate.   See Richards v. Mena, 907 S.W.2d 566, 572 (Tex. App. -- Corpus Christi 1995, writ dism'd by agr.); Nat'l Dev. and Research Corp. v. Panda Global Energy Co., 2002 WL 1060483 (Tex. App. -- Dallas 2002, pet. denied).   However, to recover such amounts, the evidence must establish that (1) the legal assistant is qualified through education, training, or work experience to perform substantive legal work; (2) that substantive legal work was performed under the direction and supervision of an attorney; (3) the nature of the legal work that was performed; (4) the hourly rate being charged for the legal assistant; and (5) the number of hours expended by the legal assistant.   Gill Sav. Ass'n v. Int'l Supply Co., Inc., 759 S.W.2d 697, 702 (Tex. App. -- Dallas 1988, writ denied).

27.   In order to establish an affirmative defense of laches a defendant must prove:

(a)   a delay in asserting a right or claim,

(b)   that the delay was not excusable, and

(c)   that there was undue prejudice to the defendant.

Westchester Media v. PRL USA Holdings, Inc., 214 F.3d 658, 668 (5th Cir. 2000).   Prejudice is required because laches is "'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'"

National Ass'n of Gov't Employees v. City Public Serv. Bd., 40 F.3d 698, 710 (5th Cir. 1994) (quoting Order of Railroad Telegraphers v. Railway Express Agency, Inc., 64 S.Ct. 582, 586 (1944)).   The period for laches begins when the plaintiff knew or should have known of the infringement.   Elvis Presley Enterprises, Inc. v. Capece, 141 F.3d 188, 205 (5th Cir. 1998).

28.   To succeed in having this action dismissed for failure to join a party required by Federal Rule of Civil Procedure 19, PRMI must show that Alpha is a necessary party, and if so to show that Alpha is indispensable.   See Nottingham v. General American Communications Corp., 811 F.2d 873, 880 (5th Cir. 1987); James v. Valvoline, Inc., 159 F.Supp.2d 544, 550 (S.D. Tex. 2001).   A necessary party is one (1) in whose absence complete relief cannot be accorded among those already parties, or (2) the party claims an interest relating to the subject of the action and is so situated that the disposition of the action in the party's absence may (i) as a practical matter impair or impede the party's ability to protect that interest or (ii) leave any of the parties already in the litigation subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. FED. R. CIV. P. 19(a).

29.   If a party is necessary but cannot be joined, the court must determine whether that person is indispensable and whether in

equity and good conscience the action should be dismissed.  FED. R. CIV. P. 19(b).  To make this determination the court considers whether the party's absence would be prejudicial to that party or those already parties; whether the court can shape the relief granted to lessen or avoid the prejudice; whether a judgment rendered in that party's absence would be adequate; and whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.  Id.

30.  Under Rule 19 owners of trademarks are usually treated as necessary and indispensable parties in a trademark case.  See, e.g., Association of Co-operative Members, Inc. v. Farmland Indus. Inc., 684 F.2d 1134, 1143 (5th Cir. 1982).  They are usually treated as indispensable because trademark owners have an interest in being able to fully exploit their marks that might be impaired if the opposing party prevails.  See Jaguar Cars Ltd. v. Manufactures Des Montres Jaguar, 196 F.R.D. 306, 308 (E.D. Mich. 2000).  See also Lisseveld v. Marcus, 173 F.R.D. 689, 693 (M.D. Fla. 1997) (noting that this situation typically arises when the licensee of a trademark asserts its rights against an alleged infringer without joining the licensor).  In this action the reasoning does not apply because Alpha does not have a recognized interest in the plaintiff's U.S. Trademark.  See Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona, 330 F.3d 617, 628

(4th Cir. 2003) (noting that United States courts do not entertain actions seeking to enforce trademark rights that exist only under foreign law).  See also A&L Laboratories, Inc. v. Bou-Matic LLC, 429 F.3d 775, 781 (8th Cir. 2005) (affirming decision of district court not to add parent company as a necessary party because parent company used the trademarks in Europe and the parties did not raise issues of foreign trademark ownership).  PRMI has not addressed the issue of how Alpha's foreign trademark makes it a necessary party, or given any other reason that Alpha is a necessary party.  PRMI has therefore failed to meet its burden under Rule 19.

To the extent that any Finding of Fact is more properly characterized as a Conclusion of Law it is **ADOPTED** as such.  To the extent that any Conclusion of Law is more properly characterized as a Finding of Fact it is **ADOPTED** as such.

### ORDER

The court will enter a final judgment awarding ARI (1) a permanent injunction, (2) ARI's reasonable attorney's fees of $383,986.10, and (3) post-judgment interest on this amount.  All other relief sought by either party is **DENIED**.

**SIGNED** at Houston, Texas, on this the 14th day of July, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE