# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

# FILED

February 22, 2008

No. 06-20645

Charles R. Fulbruge III
Clerk

AMERICAN RICE, INC.

　　　　　　　　　　　　　　　Plaintiff-Appellant, Cross-Appellee

v.

PRODUCERS RICE MILL, INC.

　　　　　　　　　　　　　　　Defendant-Appellee, Cross-Appellant

**UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED**

Appeal from the United States District Court
for the Southern District of Texas

MAR 2 7 2008

**MICHAEL N. MILBY, CLERK OF COURT**

Before HIGGINBOTHAM, DAVIS, and SMITH, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

　　　In this Lanham Act/breach of contract action, the district court entered judgment for Plaintiff-Appellant Cross-Appellee, American Rice, Inc ("ARI") against Defendant-Appellee Cross-Appellant Producers Rice Mill, Inc. ("PRMI"). PRMI challenges that judgment on multiple grounds, and ARI complains of the damage award. We affirm the district court's liability findings, vacate the attorney's fee award, and remand for entry of judgment consistent with this opinion on the damage award.

1

## I. Facts and Prior Proceedings

For thirty-five years, ARI, a Delaware corporation, has continuously sold parboiled, American long-grain rice in Saudi Arabia under ARI's "Abu Bint" brand name. During this time, ARI has spent $25 million to $30 million to advertise and promote this brand with a design of a girl on the label ("Girl Design"). Because of the goodwill it has established in Saudi Arabia, ARI's rice sells at a premium over competitors' rice. ARI currently sells approximately 120,000 to 150,000 tons of rice in Saudi Arabia per year. Parboiled rice constitutes approximately ten to thirteen percent of the Saudi rice market, and ARI has approximately sixty-five percent of the Saudi parboiled market. ARI's Girl Design on its packaging is the key feature of its brand. Many consumers in Saudi Arabia identify ARI's "Abu Bint" rice by this Girl Design and ask for it as "girl brand" rice. ARI owns U.S. Trademark Registration No. 882,997, issued December 23, 1969, for the Girl Design, and this registration was most recently renewed on August 4, 2000.

PRMI is also a seller of parboiled, American long-grain rice in Saudi Arabia. PRMI is an Arkansas corporation that operates as a farmer-owned cooperative. A number of farmer members provide rice which the corporation then processes and sells. Any profit PRMI derives from rice sales flows through to the individual farmer members. PRMI's rice bags depict a girl with a hat ("Girl with a Hat Design"), and it has used this image since 1985. Until 2005, its bags also featured the words "Al Falaha," which means "farmer's girl" in Arabic, and this was changed to "Bothaina," a girl's name, in 2005. Additionally, PRMI includes on its bags its registered script mark, *"Par Excellence,"* alongside the Girl with a Hat Design. PRMI's Girl with a Hat Design has not been

2

registered as a trademark. PRMI has sold only 1,000 to 3,000 tons of rice annually in Saudi Arabia since 1985 in bags depicting this Girl with a Hat Design.

In early 2005, PRMI made plans to sell rice under a private label brand as requested by its Saudi wholesale customers and, at the recommendation of these customers, it incorporated a different design with a girl on it ("Private Label Girl Design"). Before PRMI shipped any of the rice bearing the Private Label Girl Design, ARI sued PRMI, alleging that this design was too similar to ARI's Girl Design. On April 21, 2005, ARI and PRMI settled this lawsuit. In the April 2005 Settlement Agreement, PRMI agreed not to use the proposed Private Label Girl Design *or any design confusingly similar to ARI's Girl Design.* PRMI then proceeded to use its Girl with a Hat Design (which it claims to have used continuously since 1985) on its private label rice.

At the time of the settlement, ARI alleges it had no knowledge that PRMI had been using the Girl with a Hat Design for the past 20 years. ARI claims to have first learned of PRMI's Girl with a Hat Design, an allegedly infringing use, in September 2005. ARI brought this lawsuit in September 2005 for both infringement under the Lanham Act[1] of its Registered Trademark No. 882,997 and for breach of the April 2005 Settlement Agreement, alleging that the Girl with a Hat Design both created a likelihood of confusion under the Lanham Act and was confusingly similar to its Girl Design in violation of the Settlement Agreement.

The district court consolidated a preliminary injunction hearing with a bench trial on the merits. The court found trademark infringement under the

---

[1] 15 U.S.C. § 1051 *et seq.*

Lanham Act as well as a breach of the Settlement Agreement. The court originally issued Findings of Fact and Conclusions of Law and an Order on January 10, 2006, which awarded ARI a permanent injunction (based both on the Lanham Act violation and the breach of the Settlement Agreement), disgorgement of PRMI's profits from 2005 (as measured by PRMI's sales for that year) in the amount of $1,256,635.00 for violation of the Lanham Act, reasonable attorney's fees under Texas law for breach of the Settlement Agreement,[2] as well as interest and costs. On July 14, 2006, the district court issued Amended Findings of Fact and Conclusions of Law and an Order, awarding only a permanent injunction, reasonable attorney's fees of $383,986.10 for breach of the settlement agreement, and interest. This Amended Order vacated the profits award of $1,256,635.00, finding instead that PRMI only had $227.10 in profits in 2005 based on PRMI's tax return, which the court determined was the best measure of PRMI's profits. The court further determined that under an "election of remedies" theory, ARI was only entitled to recover under one of the alleged theories — the Lanham Act or breach of the settlement agreement — and, as such, the court awarded only the attorney's fees and injunction available under Texas law for breach of the Settlement Agreement since it was the greater recovery of the two. Additionally, the court determined that PRMI had not established its affirmative defense of laches. ARI timely appealed, and PRMI timely cross-appealed.

---

[2]Although attorney's fees are also potentially awardable under the Lanham Act, 15 U.S.C. § 1117, the court determined that they could not be awarded in this case because it did not represent an "exceptional case" as required by the language of § 1117 for the award of attorney's fees. This finding was not appealed.

4

## II.  PRMI's Cross-Appeal

### A.

In its cross-appeal, PRMI argues first that the district court improperly exercised extraterritorial jurisdiction because the allegedly infringing conduct took place in Saudi Arabia.  This Court reviews a district court's assumption of subject matter jurisdiction *de novo*.[3]

This Court's decision in *American Rice, Inc. v. Arkansas Rice Growers Cooperative Ass'n*[4] controls this issue.  In that case, ARI, the plaintiff in this case, sued Arkansas Rice Growers Cooperative Association ("Riceland") for trademark infringement of its Girl Design which took place in Saudi Arabia.[5] In determining whether the district court's exercise of extraterritorial jurisdiction was proper, we explained that the appropriate factors to consider were the sufficiency of the contacts in this country and the interests of the United States, including "the citizenship of the defendant, the effect on United States commerce, and the existence of a conflict with foreign law."[6]  We made it clear that the absence of any of these factors is not dispositive, nor are these factors the exclusive factors to be considered.[7]

In *American Rice*, we focused on the fact that Riceland was an Arkansas corporation engaged in both interstate and foreign commerce and that the

---

[3]*PCI Transp. Inc. v. Fort Worth & Western R.R. Co.*, 418 F.3d 535, 540 (5th Cir. 2005) (citing *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 772 (5th Cir. 2003)).

[4]701 F.2d 408 (5th Cir. 1983).

[5]*Id.* at 412.

[6]*Id.* at 414.

[7]*Id.*

defendant's processing, packaging, transportation, and distribution activities took place in the United States, notwithstanding the fact that the "consummation of the unlawful activity occurred on foreign soil."[8] Where steps were taken in the United States which were "essential steps in the course of business consummated abroad," we concluded that the illegality of the business in Saudi Arabia tainted the acts that took place on American soil.[9]

Applying the first two *American Rice* factors, PRMI is an American corporation based in Stuttgart, Arkansas, and PRMI's sales in Saudi Arabia have an effect on interstate commerce based on the processing, packaging, transportation, and distribution activities which take place in the United States before the rice reaches Saudi Arabia. These facts are nearly identical to the ones found sufficient for exercise of extraterritorial jurisdiction over rice sales in Saudi Arabia in *American Rice*.[10] In addition to the contacts PRMI has with the United States mentioned above, PRMI also makes payments to its member farmers in the United States both before and after shipment of the rice to Saudi Arabia.

In *American Rice*, we left open the possibility, however, that where it would be an affront to Saudi sovereignty to exercise jurisdiction, such jurisdiction should not be exercised.[11] However, "[a]bsent a determination by a

---

[8]*Id.* at 414–15.

[9]*Id.* at 415. *See also Steele v. Bulova Watch Co.*, 344 U.S. 280, 285–86 (1952) (in considering extraterritorial Lanham Act jurisdiction, the Supreme Court held that jurisdiction extends to reach United States citizens' infringing acts in foreign countries where some lawful acts were commenced in the United States).

[10]701 F.2d at 414–15.

[11]*Id.* at 414–16.

Saudi court that [defendant] has a legal right to use its marks, and that those marks do not infringe ARI's Abu Bint mark, we are unable to conclude that it would be an affront to Saudi sovereignty or law if we affirm the district court . . . ."[12] In this case, the record does not reflect a finding by a Saudi court that PRMI had a legal right of use of the Girl with a Hat Design, nor do we have a finding by a Saudi court that the Girl with a Hat Design does not infringe ARI's Girl Design.[13] Therefore, we conclude that the district court properly exercised jurisdiction in this case.

B.

PRMI asserts next that ARI did not have a protectable right in the Girl Design mark asserted and that the likelihood of confusion finding by the district court was clearly erroneous. Our task is to determine from the record whether the district court's findings were clearly erroneous. "Likelihood of confusion is a question of fact reviewed for clear error."[14]

To recover on a claim of trademark infringement, a plaintiff must first show that the mark is legally protectable and must then establish infringement

---

[12]*Id.* at 415.

[13]The only evidence in the record of any possible Saudi recognition of a right of PRMI to use the Girl with a Hat Design is a report from the Saudi Ministry of Commerce which was made pursuant to a raid of a rice distributor's warehouse in Saudi Arabia. This report discusses a number of attributes of different companies' rice bags and specifically refers to PRMI's word-marks but does not mention this particular Girl with a Hat Design. As such, although the report found no problems with the text on the PRMI bags that were inspected, this report does not constitute proof that PRMI had a legally protected right to use the Girl with a Hat Design.

[14]*Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 196 (5th Cir. 1998) (citing *Society of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs, Inc.*, 41 F.3d 223, 225 (5th Cir. 1995); *Blue Bell Bio-Med. v. Cin-Bad, Inc.*, 864 F.2d 1253, 1260 (5th Cir. 1989)); *see also Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 665 (5th Cir. 2000).

by showing a likelihood of confusion.[15]  To be protectable, a mark must be distinctive, either inherently or by achieving secondary meaning in the mind of the public.[16]  The Lanham Act provides a cause of action for infringement where one "uses (1) any reproduction, counterfeit, copy[,] or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution[,] or advertising of any goods; (5) where such use is likely to cause confusion, or to cause mistake or to deceive."[17] The factors used by this Circuit in determining whether a likelihood of confusion exists are: "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers."[18] "The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the . . . factors."[19]

---

[15]*Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998) (abrogated on other grounds by, *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32–33 (2001)) (citing *Taco Cabana Int'l Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1117–18 (5th Cir. 1991), *aff'd*, 505 U.S. 763 (1992); *Security Ctr. Ltd. v. First Nat'l Sec. Ctrs.*, 750 F.2d 1295, 1298 (5th Cir. 1985)).

[16]*Id.* (internal citations omitted); *see also Security Ctr.*, 750 F.2d at 1298.

[17]*Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap and Emblem Mfg.*, 510 F.2d 1004, 1009–10 (5th Cir. 1975); *see also* 15 U.S.C. § 1114.

[18]*Oreck Corp v. U.S. Floor Systems, Inc.*, 803 F.2d 166, 170 (5th Cir. 1986) (citing *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 595 (5th Cir. 1985); *Sun-Fun Products v. Suntan Research & Dev.*, 656 F.2d 186, 189 (5th Cir. 1981)).

[19]*Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985) (citing *Armco, Inc. v. Armco Burglar Alarms Co.*, 693 F.2d 1155, 1159 (5th Cir. 1983)).

PRMI first argues that ARI cannot recover under the Lanham Act because ARI does not use the specific mark ARI asserts has been infringed with trademark registration number 882,997 in Saudi Arabia. PRMI contends that ARI only uses its mark with the registration number 1,233,824 in Saudi Arabia. This Court has previously refused to grant a remedy to a plaintiff where that plaintiff was not using the allegedly infringed mark in the same trading area as a defendant.[20]  However, because we find that ARI did use the mark with the registration number 882,997 containing the contested Girl Design in Saudi Arabia, these cases are inapplicable.

The only difference between the 882,997 mark, which ARI asserts has been infringed, and the 1,233,824 mark, which PRMI argues is the only one in use by ARI in Saudi Arabia, is the inclusion of the words "Golden Parboiled" within the black space at the bottom of the Girl Design in the latter mark. Otherwise, both marks are identical images of the Girl Design icon. ARI explains that the mark that includes the text "Golden Parboiled" is "materially" the same as the one it asserts has been infringed and that the addition or omission of "Golden Parboiled" is immaterial.  According to the Trademark Office's Trademark Manual of Examination Procedures, a mark with differences from the original may still be considered by the Office as a "use specimen" for proof of use of the mark.[21]  ARI points out, based on this Trademark Office policy, that it has used the 882,997 mark in Saudi Arabia as evidenced by its submission of use specimens which look like the 1,233,824 mark (meaning that they differ from the

---

[20]*See John R. Thompson Co. v. Holloway*, 366 F.2d 108, 116–17 (5th Cir. 1966); *Am. Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619, 626 (5th Cir. 1963).

[21]TRADEMARK MANUAL OF EXAMINATION PROCEDURES § 1604.13.

882,997 registration only in that it also includes the words "Golden Parboiled"), which have been accepted by the Trademark Office for over thirty-five years as use specimens for the 882,997 registration and renewals thereof.  As such, we therefore find that ARI has used the 882,997 mark with the Girl Design in Saudi Arabia, and thus ARI may recover under the Lanham Act so long as there is a likelihood of confusion according to the factors set forth in our case law.[22]  Based on those factors, which are detailed below, we find that the district court did not clearly err in finding that PRMI's Girl with a Hat Design presents a likelihood of confusion with ARI's Girl Design.

### (1) Strength of the Mark

The district court found that ARI's Girl Design was "strong, fanciful, and famous" in Saudi Arabia.  Strength of a trademark is determined by two factors. The first factor considers where the mark falls on a spectrum:  "Marks may be classified as generic, descriptive, suggestive, or arbitrary and fanciful . . . . [W]ithin this spectrum the strength of a mark, and of its protection, increases as one moves away from generic and descriptive marks toward arbitrary marks."[23]  The second factor is the standing of the mark in the marketplace.[24]

The district court did not clearly err in finding ARI's mark to be fanciful, and thus strong, because the image of a girl icon being used to sell rice is not

---

[22]See Oreck Corp., 803 F.2d at 170.

[23]Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc., 725 F.2d 336, 346 (5th Cir. 1984) (citing Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1183 (5th Cir. 1980), cert. denied, 450 U.S. 981 (1981)).

[24]See Sun Banks of Florida, Inc. v. Sun Federal Sav. and Loan Ass'n, 651 F.2d 311, 315 (5th Cir. 1981).

intrinsic to rice as a product.  Moreover, ARI's mark is incontestable,[25] which means that ARI's mark is "protected from challenge by a presumption of validity."[26]  PRMI argues that the girl icon incorporates a bowl of rice in its imagery, and thus the mark is descriptive and deserving of less protection.[27] However, even a descriptive mark can be strong if it has obtained secondary meaning in the marketplace.  "A descriptive mark can become distinctive [and thus strong] if over time it has developed secondary meaning, which occurs when, in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself."[28]  The record shows that ARI's mark is incontestable and that ARI was the first to market rice with a girl icon on its rice bags.  ARI has promoted this Girl Design in its advertising, and its Abu Bint brand is widely associated with American parboiled rice in Saudi Arabia, such that consumers ask for "girl brand" rice and

---

[25]A registered mark that has been and is still in continuous use in commerce for five consecutive years subsequent to the date of such registration is incontestable.  15 U.S.C. § 1065.  A registration of mark that is incontestable "shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration subject to any conditions or limitations stated therein . . . ."  *Id.* § 1115(a).

[26]*Union Nat. Bank of Tex., Laredo, Tex. v. Union Nat. Bank of Tex., Austin, Tex.*, 909 F.2d 839, 842 n.6 (5th Cir. 1990) (citing *Park 'N Fly v. Dollar Park 'N Fly*, 469 U.S. 189, 198–99 (1985)).

[27]The language of the Lanham Act forecloses any conclusion that a mark that is registered and has become incontestible, such as ARI's, may be challenged as unprotectable because it is "merely descriptive."  *Park 'N Fly*, 469 U.S. at 196.  Here, however, PRMI does not argue that ARI's mark deserves no protection.  Instead, PRMI challenges that ARI's mark was not strong under the likelihood of confusion test because it was descriptive as opposed to fanciful.

[28]*Test Masters Educ. Svcs., Inc. v. Singh*, 428 F.3d 559, 566 (5th Cir. 2005) (internal quotations omitted).

distributors ask for a girl icon to be used on rice.  Thus, even if ARI's Girl Design is considered to be descriptive instead of fanciful, we agree with the district court that it is still a strong mark because of its strong established secondary meaning in the market.  Furthermore, even if the mark is descriptive with an acquired secondary meaning, its incontestable status provides ARI protection.[29] Therefore, the district court did not clearly err in finding ARI's mark to be strong.

### (2) Similarity of Design

The district court found ARI's and PRMI's designs to be very similar.  The marks both depict young women with similar hair, dress, and features, posed behind a rectangular shape, holding a bowl of rice, and utilizing the same color scheme of red, yellow, and black.  PRMI points out the differences in the icons. ARI's Girl Design depicts a visibly Asian girl, while PRMI's Girl with a Hat Design incorporates a scarf or hat on the head of the girl.  The district court considered these differences and concluded that the similarities were sufficient to persuade it that the designs are very similar.  This finding is not clearly erroneous.

Further, the record reflects that rice is not always sold in bags in Saudi Arabia. Often, customers will buy rice from sellers who have put the rice in bins and sell "girl rice" to customers who ask for it.  When customers request "girl rice," they are seeking ARI's Abu Bint brand, but because PRMI's brand also uses a girl design, this similarity of that design often leads to confusion in the market.

––––––––––––––––––––

[29]The Lanham Act provides for incontestable status for descriptive marks. *Park 'N Fly*, 469 U.S. at 201.

PRMI also argues, however, that simply because ARI and PRMI both employ girl icons on their rice bags does not mean the icons are so similar that ARI should be granted a monopoly over the use of girl icons on rice in Saudi Arabia. In *Squirrel Brand*, we found no likelihood of confusion where plaintiff and defendant both employed squirrel images on bags of nuts and the dominant feature of the labels at issue was not the squirrel images, but rather the brand names.[30] Further, we found that because squirrels are "so universally associated in the public mind with nuts," there was no likelihood of confusion.[31] *Squirrel Brand* is distinguishable from the instant case because any "universal association" between a girl icon on a rice bag and rice itself is the result of ARI's presence and promotion of its product in the Saudi market, as opposed to *Squirrel Brand*, where the association of squirrels with nuts is independent of the commercial nut market. Therefore, the district court did not clearly err in finding the girl designs to be similar.

(3) Similarity of Products

No serious challenge is made to the district court finding that ARI's and PRMI's American parboiled rice are identical products. This finding is not clearly erroneous.

(4) Identity of Retail Outlets and Purchasers

The district court found that rice sold by ARI and PRMI is sold in the same channels of trade and is available to Saudi consumers in the same retail locations. It is uncontested that many of the same Saudi distributors have bought both brands of rice for years. Therefore, the district court's finding that

---

[30] *Squirrel Brand Co. v. Barnard Nut Co.*, 224 F.2d 840, 844–45 (5th Cir. 1955).

[31] *Id.*

13

this factor supports a likelihood of confusion is not clearly erroneous.

### (5) Similarity of Advertising Media Used

Here, a court looks for advertising in similar media as an indication that consumers might be confused as to the source of similar products.[32] Because ARI has spent millions in advertising and promoting its brand and PRMI has not advertised at all, this factor is rendered irrelevant. However, these facts are relevant to the next factor: intent.

### (6) Intent of Defendant

"Proof of the defendant's intent to benefit from the good reputation of the plaintiff's products is not required in order to establish infringement. If such intent can be shown, however, it may provide compelling evidence of a likelihood of confusion."[33] Further, "the intent of defendants in adopting (their mark) is a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of (the plaintiff,) that fact alone may be sufficient to justify the inference that there is confusing similarity."[34] The district court found that

> [a]t all times material to this action, PRMI knew of the Abu Bint brand, the related ARI Girl Design, and ARI's registration rights. By selling its PRMI Girl with Hat Design brand . . . into Saudi Arabia, PRMI intended to trade on the goodwill of Abu Bint brand and its related Girl Design in disregard of ARI's rights.

These findings that PRMI intended to benefit from the goodwill associated with ARI's brand are supported by the record.

---

[32]*See, e.g., Oreck Corp.*, 803 F.2d at 172–73.

[33]*Id.* at 173 (citing *Exxon Corp. v. Tex. Motor Exchange of Houston, Inc.*, 628 F.2d 500, 506 (5th Cir. 1980)).

[34]*Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 703–04 (5th Cir. 1981) (internal quotation omitted).

ARI has a registered, incontestable trademark, ARI was the first in Saudi Arabia to market its parboiled rice with a girl design, ARI spent millions in advertising and promotion of its brand with the Girl Design, and ARI's brand name "Abu Bint" translated means "girl brand." The record evidence strongly supports an inference that PRMI decided to use a girl icon because of the goodwill ARI had already established in the market. PRMI did no advertising of its own mark. PRMI admitted to using a girl design on its private label rice in 2005 because rice distributors in Saudi Arabia wanted such a design. PRMI admitted repeatedly that a girl icon is what the market and the customers ask for. Indeed, a rice distributor in Saudi Arabia (named Shanshal), specifically supplied PRMI with variations on a girl icon from which PRMI was to choose for use on the private label brand. Shanshal was the same person who was associated with Riceland in the 1983 *American Rice* case, in which ARI sued Riceland for infringement of its girl design in Saudi Arabia. PRMI knew of Shanshal's association with Riceland and the attendant litigation and nevertheless elected to use a girl design suggested by Shanshal. When the district judge asked PRMI's Senior Vice President of Sales and Marketing and Secretary-Treasurer, Marvin Baden, why the market in Saudi Arabia wanted a girl on rice labels, Mr. Baden responded: "Well, I guess the same thing when people started parboiled rice in the United States with Uncle Ben's, they wanted a brand similar to Uncle Ben's because that's just what the market calls for." PRMI also admitted that with regard to its "*Par Excellence*" rice, which it ships worldwide under that name, it adds a girl icon to rice bags with this brand name only in Saudi Arabia and other nearby countries in that region.

Additionally, Lee Adams, President of ARI, testified that he has read

reports of and has witnessed sellers of rice in Saudi Arabia pointing customers to bins of "bint" ("girl") rice, which were not ARI's "Abu Bint," when customers requested "Abu Bint" rice.  This practice provided PRMI with a powerful incentive to supply a "girl brand" to substitute for customer requests for Abu Bint.  It is also significant that the critical 2005 negotiations by PRMI with buyers to sell rice under a private label with its Girl with a Hat Design occurred just after ARI altered its marketing model in Saudi Arabia.  In 2005, ARI, for the first time, designated an agent in Saudi Arabia (Alesayi) as its sole distributor of rice.  Other rice distributors could still purchase ARI's Abu Bint rice but only through this exclusive agent at a higher price.  The district court was entitled to infer that this change created a marketing opportunity for PRMI to fill this demand from previous ARI customers for American parboiled rice and to trade on ARI's goodwill.

In light of this record support of the district judge's finding of intent, we conclude that the district court did not clearly err in finding that PRMI intended to trade on ARI's goodwill by using the Girl with a Hat Design.

<u>(7) Actual Confusion</u>

The district court found no evidence of actual confusion in the market between the ARI Girl Design and the PRMI Girl with a Hat Design, and ARI does not argue to the contrary.  Although actual confusion is the "best evidence" of confusion, it "is not necessary to a finding of likelihood of confusion."[35]

<u>(8) Degree of Care of Potential Purchasers</u>

The district court found that Saudi Arabian consumers often identify rice

---

[35]*Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir. 1980); *see also Taco Cabana Int'l.*, 932 F.2d at 1122 n.9 (stating that no single factor is dispositive).

by the images or icons associated with those brands. The record support for intent proves this point as well: the market wants girl brand rice. Such a market desire hinges upon iconography used on the rice. The evidence makes clear that the use of images on rice brands is important in Saudi Arabia. The district court's findings are not clearly erroneous.

In conclusion, because nearly all of the likelihood of confusion factors weigh in ARI's favor, and particularly in light of the evidence of PRMI's intent to trade on ARI's goodwill, we conclude that the district court did not clearly err in finding a likelihood of confusion between PRMI's Girl with a Hat Design and ARI's Girl Design.

C.

PRMI argues next that the district court erred in finding that ARI's claim was not barred by laches. The district court found that ARI had an excuse for its delay in bringing suit because it did not know or have reason to know until 2005 that PRMI had used the Girl with a Hat design since 1985. Our review of this laches finding is for an abuse of discretion.[36]

A defendant urging a laches defense for inexcusable delay that causes prejudice must establish: "(1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay."[37] This Court has held that the time period for laches "begins when an owner of a mark first has knowledge of the accused use."[38] We conclude that

---

[36]*Kennedy v. Electricians Pension Plan, IBEW No. 995*, 954 F.2d 1116, 1121 (5th Cir. 1992).

[37]*Westchester Media*, 214 F.3d at 668 (citing *Elvis Presley Enters.*, 141 F.3d at 205).

[38]*Armco, Inc.*, 693 F.2d at 1161; *see also Elvis Presley Enters.*, 141 F.3d at 205 (period begins when plaintiff knew or should have known of the infringement).

17

the district court did not abuse its discretion in finding ARI's delay was
excusable. The record does not support the argument that ARI knew of PRMI's
use of the infringing design before 2005. The only evidence of ARI having any
prior knowledge of potential infringement by PRMI is a vague Saudi Ministry
report which does not mention the girl image at issue. Additionally, the only
registration of trademarks by PRMI were word marks, not the Girl with a Hat
Design, so ARI had no reason to know of PRMI's infringing mark by virtue of
PRMI's registration of its word trademarks. The district court also reasonably
concluded that because PRMI's brand was distributed in such small quantities
in Saudi Arabia, ARI's failure to discover PRMI's use of the girl label was not
due to lack of diligence. The district court did not abuse its discretion in
determining that ARI had an excuse for its delay in bringing suit because it did
not know of PRMI's infringement until 2005.

D.

PRMI next argues that the injunction granted by district court, on both the
Lanham Act claim and for the breach of the Settlement Agreement, was
overbroad for two reasons: (1) the injunction should not have extended to labels
with girl images generally and (2) the injunction should have applied only in
Saudi Arabia and should not have been extended to Djibouti. A grant of
injunctive relief is reviewed for an abuse of discretion.[39]

Our discussion in part B, above, of the district court's finding that PRMI
intended to trade on ARI's goodwill is also relevant here. In that analysis, we
concluded that the record supported a finding that PRMI's use of a girl design

---

[39]*Houston Chronicle Pub. Co. v. City of League City, Tex.*, 488 F.3d 613, 621 (5th Cir.
2007) (internal citations omitted).

on rice bags in the Saudi market was likely to cause confusion, and thus it infringed ARI's trademark. Relatedly, we conclude that the district court did not abuse its discretion in extending the scope of the injunction to a design with a girl image for use on rice.

We also conclude that extending the injunction to Djibouti was not an abuse of discretion. The record reflects that PRMI made sales of rice bearing the Girl with a Hat Design in both Saudi Arabia and Djibouti and that ARI also sold its Abu Bint rice in both of those countries. Furthermore, PRMI did not object to the pretrial order in which ARI initially requested a geographically unlimited injunction. "If a claim or issue is omitted from the [pretrial] order, it is waived . . . ."[40] The district court's original Findings of Fact and Conclusions of Law and Order awarded a geographically unlimited injunction, but after hearing supplemental testimony, the court limited the injunction to those two countries. ARI does not contest the reduction in scope of the injunction, and in light of the record reflecting sales by both ARI and PRMI of their parboiled rice brands in both countries, we conclude that the district court did not abuse its discretion regarding the geographic scope of the injunction.

### III. ARI's Appeal

#### A.

In its appeal, ARI argues first that the application of the election of remedies theory to its recovery was erroneous because its theories of recovery are neither inconsistent nor do they allow ARI to recover twice for the same injury. ARI sought: (1) an injunction under both breach of contract and the Lanham Act; (2) profits disgorgement of PRMI under the Lanham Act; and (3)

---

[40]*Elvis Presley Enters.*, 141 F.3d at 206 (internal citations omitted).

attorney's fees under both theories. The district court awarded the injunction on both theories. It awarded profits disgorgement under the Lanham Act and found that no award for this element was recoverable under a breach of contract theory. The court then found that attorney's fees could only be awarded under a breach of contract theory.[41]   The court concluded that ARI could not simultaneously recover the attorney's fees under the breach of contract theory and lost profits under the Lanham Act because of the election of remedies theory.

The district court determined that an election of remedies was appropriate under Texas law because to allow ARI to receive both an attorney's fees award for contract breach and profits disgorgement under the Lanham Act would constitute impermissible picking and choosing among damage elements arising under different theories of recovery. Whether to impose the election of remedies requirement under Texas law is a question of law that is reviewed *de novo*.[42]

In *Quest Medical, Inc. v. Apprill*, we explained that

Under Texas law, "when a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief" . . . . If prior to

---

[41]The district court determined that it could award attorney's fees on the breach of contract claim because it had issued an injunction based on that claim. *See Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 796–97 (Tex. App. — Hous. [1st Dist.] 2001) (attorney's fees may be recovered in addition to something of value which is not limited to a monetary award — in this case, an injunction); *see also Rasmusson v. LBC PetroUnited, Inc.*, 124 S.W.3d 283, 287 (Tex. App. — Hous. [14th Dist.] 2003). However, the district court found the case not to be an "exceptional" one required for a grant of attorney's fees under the Lanham Act. *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.").

[42]*Jones v. Roadway Express, Inc.*, 931 F.2d 1086, 1088 (5th Cir. 1991).

judgment the prevailing party fails to elect between the alternative theories, the court should utilize the findings affording the greater recovery and render judgment accordingly.[43]

ARI was not granted *both* a monetary award *and* attorney's fees on *either* a Lanham Act or contract theory; ARI was granted the monetary award on the Lanham Act claim and the attorney's fees on the breach of contract claim. Were this Court to grant both awards to ARI, we would be picking and choosing from damage elements arising under different theories, which is impermissible under Texas law.[44] Thus, we affirm the district court's application of the election of

---

[43]90 F.3d 1080, 1085 n.5 (5th Cir. 1996) (quoting *Boyce Iron Works v. S.W. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988); citing *Birchfield v. Texarkana Mem. Hosp.*, 747 S.W.2d 361, 367 (Tex. 1988)); *see also Holland v. Hayden*, 901 S.W.2d 763, 767 n.8 (Tex. App. — Hous. [14th Dist.] 1995, no writ). ARI argues that these cases are distinguishable because the claimants in those cases sought actual damages under one scheme and exemplary damages under another, rejecting the less favorable, yet equally applicable, provisions of both schemes. *Quest Medical, Inc.*, 90 F.3d at 1093; *Holland*, 901 S.W.2d at 767. ARI asserts that this selective application from different schemes was problematic because exemplary damages are a function of actual damages, and so picking and choosing in this context would frustrate legislative intent. We are unpersuaded by ARI's argument. The cases are applicable to the present case as ARI is picking and choosing from different legislative schemes to avoid the less favorable, yet equally applicable, provisions of each.

[44]*See Boyce Iron Works* 747 S.W.2d at 787; *see also Holland*, 901 S.W.2d at 767 n.8. ARI also urges this Court to follow a Texas appellate decision, *Qaddura v. Indo-European Foods, Inc.*, 141 S.W. 3d 882 (Tex. App. — Dallas 2004), in which ARI asserts that the court awarded both a Lanham Act profits award and an attorney's fee award under Chapter 38, the Texas law applicable to attorney's fee awards for breach of contract. In *Qaddura*, however, the Texas appellate court held that it was appropriate to award lost profits as damages in the contract claim because that was the benefit of the bargain. This amount would thus be equal to a Lanham Act profits award, but there was no Lanham Act claim brought in that case. *Id.* at 889. Because the court clearly did not award both Lanham Act profits and § 38.001 attorney's fees, since there was no Lanham Act claim in that case, it is inapplicable.

remedies theory.[45]

## B.

ARI next challenges the district court's conclusion that PRMI's profit for 2005 that should be disgorged is $227.10.[46]  An award of profits under the Lanham Act is subject to an abuse of discretion standard of review.[47]  The district court initially awarded ARI $1,256,280.00, the amount of PRMI's sales for that year.  It then vacated that award after finding, based on PRMI's supplemental evidence, that PRMI's taxable income of $227.10 was a more appropriate sum.

In calculating profits due to ARI under the Lanham Act, the district court correctly looked to the formula provided in 15 U.S.C. § 1117(a) which provides:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark office . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . subject to the principles of equity . . . to recover . . . defendant's profits . . . .  In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed . . . .  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according

---

[45]Although it is debatable whether breach of contract and Lanham Act infringement are separate causes of action or injuries, both claims seek to compensate ARI for the same thing — PRMI's use of the Girl with a Hat Design.  Therefore, the election of remedies theory applies.

[46]ARI argues that it should instead be awarded between $8,277,556.00 and $25,132,669.00, premised on record evidence of PRMI's sales estimates over twenty years.  Additionally, PRMI challenges the $227.10 profit amount, arguing it had zero profits.

[47]*Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 346–47 (5th Cir. 2002) (quoting *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000)).

to the circumstances of the case. Such sum . . . shall constitute compensation and not a penalty.[48]

Thus, the Act allows the plaintiff to recover the defendant's profits based on proof of the defendant's sales. Once the plaintiff establishes the defendant's sales, then it is the defendant's burden to prove all elements of cost or deduction claimed.[49]

The district court's initial profits award was based on trial testimony by Mr. Baden, PRMI's Senior Vice President, that PRMI sold 3,000 tons of rice in Saudi Arabia in 2005 at $19.00 per bag. He also testified that to determine the amount of sales for the 3,000 tons, he multiplied 3,000 times 22.04623 (to get the total number of bags in the 3,000 tons) times the per bag price of $19.00, which equals $1,256,280.00. The court initially awarded the 2005 sales figure as profits to ARI because PRMI failed to provide any evidence of its costs to be deducted from sales, as required by the statutory formula in 15 U.S.C. § 1117(a).[50] The court limited the award of PRMI's profits to the year 2005 because it determined that PRMI was prejudiced in its ability to provide evidence of costs for past years because suit was not brought until twenty years after the infringement began.

In its amended findings, the court made its decision to reduce ARI's profits award to $227.10 based on supplemental evidence presented by PRMI consisting

---

[48]15 U.S.C. § 1117(a); *see also Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 586 (5th Cir. 1980).

[49]15 U.S.C. § 1117(a).

[50]The plaintiff bears the burden of proving defendant's sales, and the defendant bears the burden of proving costs or deductions therefrom. 15 U.S.C. § 1117(a).

of its 2004 tax return and testimony by PRMI's CEO, Keith Glover. Mr. Glover explained that the tax return shows that PRMI's gross worldwide sales of rice totaled $264,229,177.00, and that PRMI's taxable income on these sales was $47,753.00. From this, Glover deduced that PRMI's taxable income as a percentage of worldwide gross sales converted to .018072%. Glover then applied this percentage to the $1,256,280.00 Saudi sales figure for 2005 originally awarded by the court to arrive at a figure of $227.10 in taxable income for that year. The court was persuaded by this evidence, and in its amended Findings of Fact and Conclusions of Law and Order, the court determined that this evidence constituted proof of PRMI's profits and that to award an amount higher than $227.10 would be a penalty.

With this background, we consider first whether the district court erred in concluding that a profits award in any amount was warranted in this case. PRMI argued that an accounting of profits was not proper based on 15 U.S.C. § 1117(a) and this Court's jurisprudence. We have held that § "1117(a) remedies are awarded subject to the principles of equity," and thus, "an award of the defendant's profits is not automatic."[51] This Court has explained that in determining whether an award of profits under § 1117(a) is appropriate in trademark infringement cases, "factors to be considered include, but are not limited to[,] (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming

---

[51] *Quick Technologies, Inc.*, 313 F.3d at 349.

off."[52] As discussed earlier, we found ample record support for the district court's findings that PRMI had the requisite intent to trade on ARI's goodwill and that ARI did not unreasonably delay in filing suit because it did not know of PRMI's infringement before filing suit. We also find that an injunction alone would not compensate ARI for PRMI's past infringement and that infringing conduct should be unprofitable to infringers. In light of the foregoing, the district court did not abuse its discretion in ordering an accounting of profits and in considering an appropriate sum to award for lost profits.

We next turn to whether the district court abused its discretion in finding that PRMI's profits for 2005 amounted to $227.10. PRMI maintains that the court erred in considering profits as a recoverable Lanham Act damage item because due to the nature of its business, it retains no profits — they flow through to the member farmers. ARI argues that PRMI's business structure is irrelevant to its obligation as an infringer to disgorge profits and that since PRMI did not produce evidence of costs, ARI should be awarded profits in the amount of PRMI's sales. We must thus address two issues: (1) whether PRMI met its evidentiary burden of proving costs to offset the sales and (2) whether PRMI's status as a flow-through entity is relevant.

First, PRMI has never claimed that it produced evidence of its costs. The district court, in its original Findings of Fact, found that PRMI did not prove any costs or deductions to be subtracted from its sales. In its amended Findings of Fact and Conclusions of Law and Order, the district court did not amend this finding, nor did it consider the tax return and related testimony to be evidence of *costs*. Instead, the court explained that PRMI's supplemental evidence

---

[52]*Id.* (internal quotations omitted).

25

established PRMI's *profits*.   Because § 1117(a) provides that a plaintiff can recover as lost profits the sales of the infringer unless the infringer can prove legitimate costs to reduce that sum (which PRMI did not do), ARI argues that the district court erred in refusing to accept its damage model, PRMI's sales.  We agree that PRMI produced no evidence of proper deduction from sales to reduce its profit as contemplated by § 1117(a).  At bottom, PRMI must argue that the amounts it paid to the farmer members of the cooperative are appropriate "costs" to be applied to sales to reduce its profit.

Although PRMI did not produce evidence of its costs, it did produce evidence of its taxable income, through its tax return and the testimony of its CEO, to show that it made no profit.   In the hearing on its motion for reconsideration, PRMI explained that it is a cooperative, meaning that it is owned by member farmers, to which PRMI refers as "patrons."   Initially, the patrons deliver a quantity of rice to PRMI pursuant to an agreement.  PRMI then makes an advance to the patrons of about eighty or ninety percent of what it expects to ultimately pay the patrons.  Once PRMI sells the rice, depending on its success in the market, PRMI may make further monetary advances to the patrons.  At the end of the crop season, PRMI disburses whatever money is left after its expenses to its patrons.  PRMI is not taxed on any profits it receives from rice sales; rather, any profit flows through to the patrons who must bear any tax liability on these proceeds.  Because of this business structure, PRMI claims that it makes no profit on the rice and so should be deemed profitless for purposes of the Lanham Act.

ARI argues, however, that PRMI's flow-through status is irrelevant to the profits award.  We agree with ARI.  First, it is clear from the record that PRMI

made profits on the sales of the rice.  While explaining that PRMI profits "for [its] farmers," Mr. Baden testified that PRMI is very profitable in terms of the returns the farmers get.  Mr. Baden explained:  "[PRMI] is very profitable.  In fact, we beat the national average for the last sixteen years."  Thus, PRMI clearly earns a profit on the rice sales.

That PRMI passes the profits on to its patrons is irrelevant in the context of a Lanham Act profits award.  The "flow-through" of the profits to the farmers is certainly relevant to how PRMI is treated for tax purposes;[53] however, PRMI cites no authority for the proposition that tax treatment is relevant to the Lanham Act remedies.[54]  The fact that PRMI is not taxed on the revenues it passes on to its patrons is similar to the tax structure applied to partnerships or to subchapter "S" corporations.[55]  Cooperatives like PRMI, partnerships, and subchapter "S" corporations are all flow-through entities for tax purposes.  We have been able to locate no cases addressing the disgorgement of profits of

---

[53]Income of a non-exempt cooperative is taxed as income of the patrons, not of the cooperative.  *United States v. Miss. Chem. Co.*, 326 F.2d 569, 570–71 (5th Cir. 1964).

[54]Although agricultural cooperative corporations like PRMI are treated differently from other corporations for tax purposes and with regard to some antimonopoly, anticonspiracy, and antitrust statutes, general laws relating to corporations still apply to cooperative corporations. Am. Jur. 2d, Cooperative Associations § 12; *see also* Am. Jur. 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 193–94; Am Jur. 2d, Federal Taxation §§ 20175–187. Specifically, the Lanham Act does not provide any exceptions for cooperative corporations. *See* 15 U.S.C. § 1051 *et seq.*

[55]Subchapter "S" corporations are not subject to income tax; instead, they pass income through to their shareholders who are taxed on the income. *Bone v. Commissioner of Internal Revenue*, 324 F.3d 1289, 1291 (11th Cir. 2003); *Friedman v. Commissioner of Internal Revenue*, 216 F.3d 537, 538 n.2 (6th Cir. 2000).  "Because a partnership is not a taxable entity for federal income tax purposes, its profits and losses flow through to the partners where they are recognized for tax purposes on an individual basis." *Adler & Drobny, Ltd. v. United States*, 9 F.3d 627, 628 n.3 (7th Cir. 1993).

cooperatives under the Lanham Act. Additionally, we have found no authority for excusing any kind of flow-through entities from disgorgement due to their flow-through character, though we have found analogous cases in which partnerships and subchapter "S" corporations have had profits disgorged pursuant to the Act.[56] We see no reason to treat cooperatives such as PRMI differently. We conclude, therefore, that profits earned by PRMI are PRMI's profits for purposes of the Lanham Act, regardless of how such profits are passed on or how they are taxed.

Although the district court concluded that an award of lost profits in excess of PRMI's taxable income would represent a penalty, it provided no explanation for this conclusion. The court apparently thought it inappropriate to require PRMI to disgorge progits as measured by its sales when it had already passed those proceeds on to its farmer owners. As indicated above, we do not agree with this reasoning and see no more reason to give a cooperative infringer a pass on disgorging of profits than other business models such as partnerships or subchapter S corporations, where profits also flow through to their owners.

Such a conclusion comports with the purpose behind Lanham Act profits disgorgement. "The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; . . . to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of

---

[56]*See, e.g., WSM, Inc. v. Tenn. Sales Co.,* 709 F.2d 1084, 1087 (6th Cir. 1983) (partnership held to owe plaintiff profits pursuant to the Lanham Act); *GTFM, Inc. v. Solid Clothing, Inc.,* 215 F. Supp. 2d 273, 283, 304–05 (S.D.N.Y. 2002) (subchapter "S" corporation held to owe plaintiff profits pursuant to the Lanham Act).

registered marks . . . ."[57] Additionally, "[t]he purpose of section 1117 is to take all the economic incentive out of trademark infringement."[58] This Court has held it appropriate to award profits of an infringer pursuant to § 1117(a) for various purposes: to compensate for diverted sales, to remedy unjust enrichment of the infringer, or to deter future infringement.[59] We conclude that it comports with the purpose of § 1117 to award ARI the profits of PRMI, as contemplated by § 1117(a), due to its infringement. As such, the district court abused its discretion arriving at the $227.10 profits figure. This figure is not representative of PRMI's profits because PRMI did not prove costs or deductions from its sales and because PRMI's status as a flow-through entity for tax purposes is irrelevant.

We also conclude, however, that the district court did not abuse its discretion in determining that such a profit award should be limited to PRMI's profits earned in the year 2005. The district court acted within its broad discretion[60] in temporally limiting the profits award to 2005 because of the twenty year delay in the filing of suit by ARI, notwithstanding that the delay was reasonable for purposes of PRMI's laches defense. The district court did not abuse its discretion by finding that the delay prejudiced PRMI by inhibiting its ability to provide proof of costs or deductions from previous years.

---

[57] 15 U.S.C. § 1127.

[58] *Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 824 (5th Cir. 1998) (citing *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 621 (9th Cir. 1993) (internal quotation marks and citations omitted); *Maltina*, 613 F.2d at 585 ("[A]warding an accounting [of profits] would further Congress' purpose in enacting [§ 1117] of making infringement unprofitable.")).

[59] *Maltina*, 613 F.2d at 584, 585.

[60] *Rolex Watch USA, Inc.*, 158 F.3d at 824 ("The Lanham Act expressly confers upon the district judges wide discretion in determining a just amount of recovery for trademark infringement.") (internal quotations omitted).

We therefore conclude that the district court abused its discretion in its amended order finding $227.10 in profits. We vacate that order and find that an award of $1,256,635.00, which was the amount originally awarded by the district court before it amended its findings and conclusions, based on PRMI's sales of infringing rice in 2005, is proper.

C.

The district court's award of attorney's fees under Chapter 38 of the Texas Civil Practice & Remedies Code is also reviewed for abuse of discretion.[61] However, findings of fact regarding the reasonableness of attorney's fee awards are reviewed for clear error.[62] Because we conclude that the election of remedies theory applies in this case, the issue of whether the district court's attorney's fee award was proper is moot. The lost profits we find proper on appeal are greater than the attorney's fee award that the district court granted. Further, the profits amount is now greater than the attorney's fee figure even if reasonable fees for appeal of this case are added to that amount. Therefore, we need not address whether the amount of the award of the attorney's fees was proper.

IV. Conclusion

In response to the numerous issues on appeal and cross-appeal, we affirm the district court on all grounds except the profits award and the attorney's fee award. We therefore conclude that: the district court properly exercised jurisdiction in this case; the Lanham Act requirements were met such that ARI's Girl Design was protectable; PRMI's Girl with a Hat Design created a likelihood of confusion; the district court did not err in rejecting PRMI's laches defense; the

---

[61]*Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

[62]*Id.* (citing *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 (5th Cir. 2002)).

30

injunction the district court issued was proper; and the application of the election of remedies theory was proper. We vacate the profits award of $227.10, finding instead that a profits award of $1,256,635.00 is proper. Under the election of remedies theory, ARI is entitled to recover $1,256,635.00 in profits instead of $383,986.10 in attorney's fees. We therefore vacate the attorney's fee award. Because of this increased lost profits award, we do not reach the challenge to the district court's attorney's fee award due to the application of the election of remedies theory. We remand for entry of judgment consistent with this opinion.

AFFIRMED IN PART.
VACATED IN PART.
REMANDED.

31

No. 06-20645

JERRY E. SMITH, Circuit Judge, dissenting:

I respectfully dissent from the well-penned majority opinion. "I see two" women, "or mine eyes deceive me." WILLIAM SHAKESPEARE, THE COMEDY OF ERRORS, act V, sc. 1. My disagreement is narrow but deep: No one reasonably will confuse PRMI's Girl with a Hat Design with ARI's Girl Design. They just do not look even remotely the same. Because it was clear error for the district court to find likelihood of confusion, we should reverse and render judgment for defendant.

Using an "eyeball test," *Exxon Corp. v. Tex. Motor Exch., Inc.*, 628 F.2d 500, 504 (5th Cir. 1980) (quoting 2 J. MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 237:7 (1973)), compare the two marks:

**ARI's Girl Design**                    **PRMI's Girl with a Hat Design**




True, each depicts a female of indeterminate age wearing a collar, but that is where the similarity ends.

32

No. 06-20645

ARI's Girl Design pictures a hatless Asian woman in a red kimono. In one hand she holds a rice bowl, with the rice snugly in the bowl, and in her other hand are chopsticks. She appears to be wearing earrings. Her hair is smooth; her face, like her shoulders, is narrow. She greets would-be buyers at an angle, showing that satisfied grin that comes only from a good bowl of parboiled, American long-grain rice.

Then look at PRMI's Girl with a Hat Design. It too has a woman, but she is not Asian. Her clothes are black. She is wearing something on her head, perhaps a hijab. Her shoulders are reminiscent of Tim Tebow's. Both of her hands grasp the large, overflowing rice bowl. There are no chopsticks. Her collar is dissimilar. Her hair is wavy, not smooth, and we do not  know how it is styled, because it is covered. Her round face with toothy smile looks straight-on, like a mug shot.

Though we review marks "as a whole rather than simply comparing individual features of the marks," *id.* at 505, it is clear error to say that these designs are similar.[1]  The district court was correct that ARI's Girl Design is more than just descriptive, that ARI's and PRMI's products are identical, and that the relevant retail outlets and purchasers are the same, but that is all beside the point. The similarity of these marks fails the "eyeball test," and "[o]bviously, for picture and design marks (as opposed to word marks), similarity of appearance is controlling." 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:25 (4th ed. 1996).[2]

The Lanham Act requires that the defendant's use "is likely to cause confusion, or to cause mistake, or to deceive . . . ." 15 U.S.C. § 1125(a)(1)(A).  "The law of unfair competition has its roots in the common-law tort of deceit; its general concern is with protecting *consumers* from confusion as to source." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 157 (1989).  We do not find violation unless the infringing mark can confuse consumers, because "[t]he trademark laws exist not to 'protect' trademarks but [instead] to protect the consuming public from confusion, concomitantly protecting the trademark owner's rights to a nonconfused

_____

[1]Because the two pictures do not look the same, it is not surprising that, as the majority admits, no evidence of actual confusion was presented to the district court or suggested on appeal.

[2]*See also Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 501 (5th Cir. 1979) ("The evaluation of the marks themselves is of course the most important consideration, for it is in their similarity that the roots of the confusion lie.").

No. 06-20645

public." *Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*, 725 F.2d 336, 348 (5th Cir. 1984) (internal citations and quotations omitted).  With these standards in mind, these marks are not confusingly similar.

Given how dissimilar are the marks, PRMI is right to note that the principle in *Squirrel Brand Co. v. Barnard Nut Co.*, 224 F.2d 840 (5th Cir. 1955), applies.  If these marks are deemed confusingly similar, how can PRMI use a woman at all?  Even if it is true that ARI introduced into Saudi Arabia an association between a woman's image and rice, it does not follow that ARI can forbid all other rice sellers from using pictures of women that do not look confusingly similar to ARI's Girl Design.  After all, "'[c]onfusion' means more than the junior user's mark merely 'calls to mind' the senior user's mark."  4 MCCARTHY, *supra*, § 23:9.

Because there is no likelihood of confusion, I would reverse.